The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This morning, our case is En Re. The Estate of John Hirschfeld. That's number 420-0243. Would the appellant state your name, please, for the record? Eric Dorkin on behalf of Petitioner's Appellants, Your Honor. And the appellate? Daniel Fies on behalf of the respondent, Mary Hirschfeld. You may proceed. Thank you, Your Honors. Again, my name is Eric Dorkin on behalf of the appellants. We are seeking reversal of the trial court's 2615 motion to dismiss. I've divided my presentation up into three pieces depending on how the court wishes to proceed. The first is the jurisdictional issue that the court has raised, if it wants to hear argument on that or if it's satisfied with what we submitted in writing. The second is the law of presumed fraud generally under Illinois law. And then the third is the application of the presumed law to the facts as we've alleged them in our citation. So, I guess I apologize for asking the court a question, but should I address the jurisdictional orally or is what we submitted in writing sufficient for the court? I think you better address it. Okay. Well, thank you. It was the understanding of all of the parties on January 24th that the trial court dismissed the citation. As evidence for that, we would cite, one, my statement during the argument where I indicated- Counselor, let me stop you right there. Are you aware the Supreme Court really doesn't care what the parties thought? They care about whether the appellate court has jurisdiction. I've authored a case where I was specifically told that. I do understand that, Your Honor. So, I guess then I will cut to the chase on the April 6th order. I believe as a standalone order, by dismissing the citation in its entirety, it is a final order and it is appealable. Independent of the January 24th dismissal without prejudice, the April 6th order says it is in fact dismissing the citation in its entirety. And I'm not aware of any rule that says in dismissing a citation or complaint that the trial court has to enumerate each of the several counts within it as dismissed, but rather may in fact dismiss it in its entirety. So, the point I was trying to make, Your Honor, and I apologize, was either the April 6th clarified the understanding, the court's understanding, the trial court's understanding of January 24th, or the April 6th order was a standalone order by saying it was dismissing the citation in its entirety. And based upon that, I believe the April 6th order is itself final. Understanding, of course, that it's referring back to the January 24th in certain portions, but it does have standalone language. That's our position as to why it's final, Your Honor. Counsel, I think you just touched upon the point that Justice Turner is making in that we can look to either one of the orders and try to interpret that as a final order. That's why, you know, it's important to be able to identify the final order. In either case, the April 6th was in fact the final order. It is, I think, the confusion that it's referencing the prior dismissal where, and I will be honest to the court, when I received the order to show cause and went back and searched the transcript, I myself was very surprised that the word dismiss did not occur in the transcript. So I'm not disputing at all that the language of the January 24th hearing did not execute a dismissal using that language. But again, I think the April 6th order does on its face saying by its dismissing in its entirety, and to the extent that it's clarifying what the trial court's understanding of January 24th was. Can I just bring up one other issue, and I understand and track your argument. I was put off in reviewing the issue by one word, and I think it was in the docket sheet, which referred to converting the order into a dismissal. Yes. Can you just address that for us, please. So, and I think that is in fact the language, if I, if I, that's the language I understood the order to show cause was most troubled by in that it was converting a dismissal that wasn't facially a dismissal. And to the extent that the first order was in fact an interlocutory order that can be clarified amended modified by any later order by the trial court. I think that's one way when it when it's convert the trial court is imparting its understanding of its own order, when it references. It's saying I'm converting that dismissal it understood the order to be a dismissal, even if it didn't say it. And I think that's within the purview of the trial board to make that statement. And again, independently I do think the April 6 stands on its own, but I also think the April 6 can clarify a non final order, to the extent that it did it with that with the language about dismissing its entirety with prejudice. Let me ask one final question on this, it seems to me in your argument and the reading of Judge Weber's order that one could almost substitute the word converted to memorialize it's almost as if the court was memorializing a prior position the court had taken. Is that I'm not trying to put words in your mouth, understand what the court, you know what the court was thinking. Well, we also, and I hesitate to tell you what I think the court was thinking other than from the language itself. There is no order from January 24 there's the transcript in the docket entry. And did the dismissal language get lost in the translation of the hearing to the docket entry, perhaps, but I think the remainder of the April 6 order including the preamble and including a recitation on the docket sheet of the telephone conference demonstrates I think the trial courts understanding so I think it would be fair to say you could read it as a memorializing, though I don't want to say specifically that the trial court use that language with that specific intent, but I think it's fairly read that way. Yes, Your Honor. And I said that was my last question but I guess that back harkening back to Justice Turner's question is that is, are we to take the position we need to glean what in fact the court was attempting to do or to memorialize. I think if I'm reading the to read the line from the April 6 order and I, it has the converted language in it that I think the court is referencing. It says the dismissal of petitioner citation to recover assets is hereby converted to a dismissal with prejudice. I don't even know that the hereby converted is essential for the ruling and finality of the trial courts order. I think the language dismissal with prejudice is the order that gets you for that that language is the totality of the case, and the finality of the case, and the reasons for the dismissal, where what's in the transcript and what's in the record before you on the briefs. But I think that language. Also, the transcript does not give a reason for dismissal the transcript as these two counts that are the subject of this appeal only addresses the presumption. It says nothing about dismissal that read it I mean it does there's nothing in there. The, the transcript, the argument for counts one and two, and the basis for the potential repleting was the, the argument put forward by petitioners before the trial court is the only way at that argument that we could sustain counts one and two counts as they were pled and as they were presented what the trial. You're conceding that then for purposes of this appeal. Yes, that, that, that is what was our. That's what was argued to the trial court and that's what, and in fact that's what our brief is on our brief is on the presumption of fraud. So I think the briefs we filed have tracked what we've argued before the trial court on January 24. And that was, and so to finish the, the narrative. That's why at that hearing, I said I would plead them again putatively understanding that they would be dismissed again. So, we were thinking, is there a way we could plead, what we might just call straightforward undue influence with facts of undue influence and we could not in good faith do that. And so that's, it was a presumption argument, that's all that was discussed because that was the basis of sustaining the claims, and that was that when it was denied that would have been the basis of the dismissal of the claims. What happened on February 28. February 28 there was a telephone conference with the court where we informed the court that we were not in fact going to replete, and that we would take the dismissal with prejudice from that point forward. There was no transcript of the telephone conference. And then the April 6 order is a memorialization of what took place at the February 28 telephone conference. Hmm. Shouldn't there be a bystanders report and if there's not a transcript for the. What happened at the February 28 telephone conference. I will be frank, I have the last time I looked at the bystander report section. My understanding is it has to be someone not a party to the case that I don't know that a bystanders report can be done by counsel, I, I, that's my recollection. I don't know that I can do a bystanders report as to what took place. I didn't, I, I'll speak frankly I didn't think it was necessary because there'd be a court order following memorializing it that would be why I didn't at the time think to do one. But my understanding of bystanders I think it has to be someone 18 and over not affiliated with the action but I apologize for not knowing. Thank you. Any other questions on this issue. Why don't you move on, Mr. Thank you, Your Honors. And I do appreciate the gravity of that issue. Justice Turner, as to why this court before it renders an opinion needs to make sure that it has proper jurisdiction. So the next section I want to talk about is the law of presumed fraud. And the focus I want to direct on the court is who is doing the transaction. And there's two types of presumptions. There's a presumption of undue influence and there's a presumption of fraud. The presumption of undue influence applies when the person whose property is being transferred does the transferring. So in this case, if john had transferred a bank account to marry himself. That would be a potential undue influence claim, because it is him doing the transaction, but the claim would be that his will was usurped by undue influence. There is a presumption of undue influence in fiduciary cases. There is case law in Illinois that says in presumption of undue influence cases, the presumption does not apply for fiduciary spouses. That's me. That's, I will say, mash MACH and wool. Those are undue influence cases where the transfer or is the owner of the property. The second type of case is the presumption of fraud case where the transfer or is the recipient of the property. And that those types of transfers have been treated differently by Illinois courts. So that would be a situation of two sorts. One, someone as an agent uses the agency relationship to transfer property from the individual to herself or to someone else. The other would be while being a fiduciary takes a joint asset and makes it unit unitary in that person's own account and I'll talk about the two cases now that address that. So the two cases are Simon and Deason. And Meath does not have that so to the extent that the respondent focuses on Meath and that line of cases. Those are the undue influence cases and do not apply to the presumption for Simon and Deason. Simon is an appellate court case that reverses a 2615 dismissal. And the important one key fact I think for Simon and Deason that I don't think should get lost here is that Simon is a 40 year marriage and Deason is a 39 year marriage. And that is to say that simply because you've been married a long time, even if it's a first spouse and not a second spouse or a third spouse. The rule applies if you're a fiduciary that the length of the marriage is not a shield. If you are a fiduciary. So in both Simon and Deason, they expressly find that the marital relationship does not preclude the presumption of fraud. In Simon and Deason, there was a written power of attorney that established the person's fiduciary status. There is no dispute that we have a written power of attorney here. There's also no dispute that there were certain actions taken under the power of attorney by Mary. We're not saying that all of the actions taken by Mary's power of attorney are presumptively fraudulent, but just that she was in fact a fiduciary for purposes of the presumption analysis. The power of attorney, contrary to what is I think suggested by respondent, and this is on page 500 of the Simon opinion is not simply for estate planning. In fact, the power of attorney in Simon is to quote manage their property, close quote, address estate planning and Medicare. So it is a broad purpose power of attorney, not unlike the broad power of attorney here. And in Simon, what the court said was, because the husband was a fiduciary under a written power of attorney. When he took the joint bank accounts and took the money out of the joint bank accounts and made that joint money his own. He severed the joint tenancy resulting in a benefit to himself and a detriment to his wife. That transfer was presumptively fraudulent. What the court didn't say was that that transaction was fraudulent. The court was saying that on the facts that should survive a 2615 that if while a fiduciary you sever a joint bank account that is presumptively fraudulent, and the court goes on to say in Simon, but of course he gets a chance to rebut that. The other thing that Simon says that's important is in Simon, he's the gentleman who transferred the property from his deceased wife says, Well, I would have gotten it anyway. Because when she died, it would have come to me so no harm no foul. And the appellate court expressly rejects that on page 503 and says no we don't buy the no harm no foul. Because had he died first, the money was already taken out of the estate and couldn't pass to her rightful heirs. So Simon again stands for the proposition that the presumption applies to joint bank accounts assignment not address the presumption of gift of a gift. No, it did not, it did not your honor it said it, it dealt flatly with, because in here's why your honor presumption of gift only applies in the undue influence cases, because it's the person, the owner of the property transferring or gifting the property, there's no gift in a presumptive fraud case, because the recipient is the is affect the donor there's no donor in a presumption of fraud case. So there won't be a discussion of presumption of gift in a presumption of fraud case, if that makes sense. Did the assignment court address me at all. Again, it didn't, it did not have to because that would have been in other ways. Is that what your argument is, I'm sorry, for the same reason, the same for the same reason. Yep. So, and Simon is is quoted but not criticized into heart in 2013. And I think that would have been the place for the Illinois Supreme Court to say Simon was wrongfully decided rather than, rather than citing with approval, and the only just so we're clear the only reason we cited to heart is an undue influence case. And the only reason we cited that was to, to have something on at the Supreme Court level saying the presumption of fraud never applies, because the reading that the respondents that does in the context of undue influence is that me says it never applies. I believe to heart says it can can apply but cautiously, but neither of those cases is a presumption of fraud case in decent. One happens in decent is slightly different. What he does is he actually uses his agency document to transfer property that is not in fact his that is his wife's to himself. And indecent, none of the parties, this is on page 637 of the court's opinion, they didn't challenge the presumption, the trial court found that the presumption applied to the transactions. What happened in that case is when he transferred them from his wife's name, he put them jointly with himself and his daughter, and he subsequently passes. So the person left rebutting the presumption is his daughter, because she's the one holding it, but there was no dispute in decent that the presumption applies the entire cases on whether the daughter had rebutted the presumption. Given that my time is running low, I will not get to the application, but to the extent that there's cause to do that, following Mr thesis presentation I will, I will do so then. Thank you, Your Honors. Thank you, counsel. Mr fees. Thank you, Your Honor. Just a couple notes on the jurisdictional question. First, we agree with Justice Kavanaugh suggestion that the April 6 order both affects the dismissal and then converts it into a dismissal with prejudice, we think that that order is self contained and says all you need to see to see that there is jurisdiction on this case, I will know just to correct a mistake statement that's not an agreed order we didn't agree to it, it was, it was prepared by respondents or by petitioners and then submitted to the court. And it was based on their desire to convert the dismissal and dismissal and prejudice facilitate this deal we didn't we didn't sign on to it. And I will know for the court also under Supreme Court rule 323 see it is possible for counsel for the appellate to file a bystanders report possibility. Yes. You're opposing counsel's explanation is the what happened on February 28 Did you agree with that. Yes, other than the statement it was an agreed order. We, we, it was prepared as an order from one party only it was not labeled an agreed order but otherwise, yes, what happened at that meeting was accurately. What do you mean there's an agreed or there's a prepared order. The April 6 order. February 28 April six that's that's the order that reflects it was discussed on February 28. Correct. Yes. And if that may be a little longer than we would have liked I'd remind the court that was when COVID was breaking out so that might have been. Okay, here's what doesn't the April 6 order, say that the trial court is going to dismiss the whole action, based upon what the trial court stated in the January hearing, and the J and in that year in the January. In that January hearing the trial court didn't say anything about dismissing counts one and two. The presumption. Yeah, the April 6 order says it's dismissed for the reasons stated in court in January, and those reasons that I would identify are to one, the court held that the presumption of fraud does not apply. And to petitioners then admitted that they could not state a claim if the presumption does not apply, and you've heard it again today that they can see that that's true. So on the transcript. So when I go back and read that transcript. That's going to I'm going to find that in there that that concession was made. Yes, I think it can fairly be read that way and I particularly point to the request to amend, which I would read as an admission that the citation as stated at that point did not say to claim and so they were requesting to amend it. And the court agreed the court said yeah okay I'll let you I'll let you amend your, your citation. But there was never an amendment. Correct. So, so, in other words, that the dismissal, which is in the April 6 order is stated to be for the reasons discussed in court in January, again, those reasons are function does not apply. And this year is admit they cannot state a claim without. And that's the basis for the order, I think, Council would agree with me. That's what the court did. So, moving on to the, the issue of the presumption I think this case demonstrates why transfers to a fiduciary spouse are not and should not be presumptively fraudulent regardless of who initiates the transfer. Now the, the essence of petitioners claim is simply a listing of all of john Hirschfeld assets totaling about two and a half million dollars. With the repeated refrain that these assets quote have not been accounted for. And that's a phrase that appears 26 times over and over again in the citation. The question for the court today is whether a presumption of fraud applies, such that such a vague pleading and sufficient data claim. And the answer based on case law and common sense has to be no. Otherwise, nearly every spouse named as an agent by power of attorney would be susceptible to a lawsuit like this one, forcing her to justify nearly every transaction over much of her 15 year marriage. And in essence, that's what the complaint or the citation is requiring Mary to do account for every transaction every bill paid every shopping trip and show where all the money went to demonstrate that it was appropriately spent. Now, as we get into the issue. I think it's significant to understand three background points. The first is that prior to petitioners pleading of the citation significant discovery already occurred. Mary produced over 20,000 pages of documents answered 210 interrogatories and Stanford deposition. And the trial court rule that that discovery satisfied any requirement that she account for what happened during the marriage. The citation to recover is a backdoor way around that ruling seeking to force Mary to account for every dollar that was spent out of john's funds. And that's really, in addition to the other problems and attempt to subvert normal requirements of discovery, which do not require a party to create any new documents or to provide any such explanation. Number two petitioners admitted that they can't state a claim except for the presumption of fraud. You've heard that again today. And that means despite the 20,000 pages despite Mary's testimony at our deposition, despite the interrogatory answers. They can't allege with any more specificity. What went wrong with the spending of john's assets. They can't say anything beyond those funds have not been accounted for. And the third background point your honors is to point out that there was a special administrator appointed below to protect the interests of john's estate with respect to the citation. Now that special administrator participated in the proceedings below but did not file a notice of appeal and did not submit a brief or even file an appearance before this court. And that's a sign that the special administrator, having reviewed all of the facts did not believe it was in the estate's best interest prosecute this appeal. In other words, he didn't think that the claims were sufficiently meritorious at the estate was likely to gain anything from this meeting. So the fiduciary for the estate affecting its interests has already concluded this appeal is not worth it. Now I'd like to dig into the issue of the presumption itself. And there's three points in particular, I want to make the first point is that, of course, we're not saying that a fiduciary spouse can never be sued. You can sue a fiduciary spouse so long as you use state enough facts to state a claim without the benefit of the presumption. All we're saying is that stating a claim requires more than simply a listing of assets and saying that various sums are not accounted for more is required. The second point is that the consistent message of Illinois case law is that marriage is different. This is the overriding principle that comes out of the Mita, Wold and Maka cases that the unique intimacy of the marriage relationship and the integrated nature of a married couples finances justify different rules. And this makes good sense because when a fiduciary spouse is even when the fiduciary spouse is the one initiating the transfer. The married couples finances are extremely into intertwined many spouses fund their common expenses from one or both of their own individual assets. And that's particularly true when they're living together in the same household finance everyday lifestyle. So in the context of such a marriage, a transfer of one spouse's funds to a joint checking account is much more likely to be simply a transfer to pay normal household expenses. And it is to be one spouse stealing from the other. And the presumptions in the law should reflect that reality fact that if spouses are moving money into a joint checking account a household expenses, we're not going to assume there's anything wrong with that unless it's demonstrated by the allegations. Now, if Mary were misappropriating the funds. Petitioners should be able to make allegations about how the expenditures out of the joint checking account or out of john's other investment accounts were not proper. They should be able to say, oh, you know, here's this $20,000 Mary spent on her Vegas vacation that she shouldn't have spent. These are lacking, there are no allegations like that about how funds spent were were inappropriately expended. So, if there's going to be a presumption of fraud in such cases, disgruntled heirs can all too easily state a claim challenging essentially all the expenditures in the marriage, which is what petitioners have done here. Down to expenses as routine as paying the mortgage, which they do in fact challenge in paragraph 54 M citation. And it gets even worse than that, because to justify all of these expenditures, Mary would have to dig into every credit card bill every grocery store visit every utility bill every medical expenditure. And justify how the funds were spent show that there was no fraud. That's a ridiculous burden on marriage that cannot be justified. And yet it is what the petitioners are hoping to impose on Mary. On the third point is to say that I don't think that that there needs to be an absolute rule and the circumstance as to whether the presumption applies to marriage or not. I can imagine some circumstances say a legal separation where a married couple is no longer living together, where it might be appropriate to apply a presumption of fraud, because some of the concerns I've just listed about common household expenses are no longer present. So, you know, the Supreme Court's case into heart, I think, points in this direction in the undue influence context where it says The presumption should be applied with caution to marital relationships. So, you know, there could be conceivably a situation in which it might apply. This case is not that Um, I do want to address both decent versus Getzler and the Simon case since Council race them. First is decent at if you look on page 637 of the fifth districts opinion and decent. It says, quote, there is no issue raised in this appeal that James did not raise the presumption. That the transactions performed by Robert with his power of attorney for Pauline were fraudulent. So there is no issue raised as to whether the presumption applied. It was something conceded by the parties in that case, and therefore dicta not not binding. That's the first point that as to why decent doesn't apply here. The second point is as Council acknowledge in decent many of the transfers were to the daughter. Not to the husband's the husband's using his power of attorney to transfer assets of his wife to his daughter. Now, of course, none of the policy considerations I just listed about a married couple having shared common expenses in their household are implicated by that. It's a different situation when you simply Money out of your wife's account and give it to your daughter and decent says rightly a presumption of fraud applies in that case. But again, that's not the case that we have here, where it's a married couple paying their joint common marital expense. So that's decent. Secondly, as to Simon and I want to correct something that Council said about Simon Simon said the case was about joint bank accounts and that's not correct. It was about assets held in joint tenancy, but they were securities held jointly. And that's important because the law of joint tenancy as applied to securities is different than the laws applied to join. If you look at the vocal case which is cited in our brief, there's a discussion of this as a joint bank accounts are different because they're governed by the contract that you have with the bank that's holding holding the investment account. And that contract says either spouse or either joint tenant can access any of the funds in the account. And that's different than the law that was being applied in Simon's just wanted to clarify that point. Of course, in this case, we're dealing with joint bank accounts where vocal is exactly on point not Simon But even beyond that, the issue in Simon Is really unique, because in that case, the wife told her husband explicitly that she wanted to leave her assets, including the securities that we're talking about to her daughter and her grandchildren. That's at page 501 of the opinion. And it was on the basis of that request and the husband's acknowledgement of it that she granted him the power of attorney and said, I want you to go affect my estate planning do it this way. I want my assets to go to my daughter and my grandchild. And the husband then went and disobeyed that direct request from his wife and he transferred the securities out of joint tenancy and do his own name. Again, and direct contradiction of his wife's explicit instructions so that that recitation of the facts really raises three distinctions with the case here. One is that here there were no explicit instructions from john to Mary that were disobeyed. Number two, here we're talking again about transactions over the course of at least seven years where Mary is managing the marital finances and keeping the household running And paying their common expenses. We're not talking about a one time transfer of $1.34 million, which is what happened in Simon And three, in our case, the POA was granted years before any of the transactions that issue not immediately prior to the question transaction. And so there's no question as to whether the POA itself was procured fraudulently is a suggestion of what happened in Simon So those unique facts of Simon could be read, I think, fairly as explaining why the the presumption of gift was overcome in that case. It's that's more appropriate than reading it to say that the presumption of fraud applies to every married couple where those facts are not present one time transfer over a million dollars. So, for these reasons, we think that the presumption of fraud cannot and should not apply to this case. And again, the best demonstration of policy consequences that would flow from Applying a presumption of fraud is this case itself and the burden that it would place on Mary to to justify every transaction in her marriage. But regardless of what you decide on the presumption and this is moving into the second part of our brief petitioners argument cannot proceed. And that's actually a pretty straightforward claim, but many of their allegations have been given up by admissions. There's two in particular, I want to talk about First, they now admit in their reply brief that even if the presumption applies. It only applies to actions that Mary took As the agent under the power of attorney. It does not apply. They now admit to actions that john I think I heard counsel say today that includes if john transferred a bank account Mary Well, he did. He transferred the joint bank account in his own name signing individually into her name. That was something that john did not marry And so I think by their own admission that claim is now excluded from their allegations. Similarly, with the transfer of jewelry and other items in a savings deposit box and the joint tenancy that was signed by john himself, not by Mary. Again, transactions related to the mortgage that was taken out on their marital home john signed that mortgage by himself. Mary did not And all of the transactions related to the Morgan Stanley IRA and the other investment accounts at Morgan Stanley. If you look at paragraph 54 in Nancy. Of the citation it confirms that those were not done pursuant to the power of attorney, but instead pursuant to a separate agency agreement and Morgan Stanley provided So all of those allegations are not pursuant to the POA and would be excluded by petitioners own admissions And in fact, if you they've attached to their citation Mary's accounting of the actions that she took under the power of attorney. That appears in the record at volume four of the common law record page 1125 and so they'd really be limited just to those transactions that are listed there. They don't allege that that listing is in any way incomplete. They only in alleged that it quote doesn't explain the depletion of john's estate. But again, that's not Mary's burden. Her burden is to account only for what she did as agent and that list is provided So that's one set of admissions that exclude a chunk of Page 13 is that they also admit that the presumption applies only to quote self healing. Right. This means that Mary has to benefit from the allegedly fraudulent transactions and if she doesn't benefit. It doesn't count. So there's a number of transfers that are documented in the citation transfers from one of john's accounts to another of john's accounts. Mary's not benefiting from that. She's just acting as POA to manage john's investments as is appropriate. Without allegations that she benefited. There's no claim stated, even with the benefit of the presumption Perhaps the largest chunk of the complaint that falls victim to this admission is the allegations related to Maraway Farms, which was john's vacation property. And again, the documents attached to the citation show that those proceeds from that sale were deposited into john's accounts. Not into Mary's account, not into a joint account. So there's no allegation that those transferred benefit benefited Mary in any way. And in fact, Those funds became part of the estates bank account are already accounted for. And they're part of the estate. So, The last point is as to the home, which is maybe the largest single dollar value of what they allege now listeners are claiming the entire $750,000 sale price of the home should be returned. Almost $350,000 of that went to repay the mortgage, which again, a very routine transaction for married couple to have a mortgage on their house. Petitioners also admit that Mary and john own the house jointly and that they meaning that they had it. They owned it together. It was not just john's asset. So to allege that Mary's disposition of that the funds from the house was improper at a minimum petitioners would have to allege that Mary took out more more money from the house and she put in You know, maybe if john paid for the entire house and then Mary sold it and took all the money for herself. But there's no allegations to that fact. And there's no allegations whatsoever about how much money. Each of the spouses into the house without those allegations. There's no basis to believe that the way Mary handled the proceeds from the sale benefited her Just proportionately. And so there can be no claim stated there either. I see my time is just about up. And if there are no more questions, we will rest on our briefs and we'll ask that the decision of the trial court. Thank you. Thank you. We'll hear rebuttal. Thank you. And I apologize. I don't believe I referred to the any of the orders is agreed, but if I did so I by no means meant to convey that impression On the last point on the. Well, the first point I want to make is Simon dealt with joint securities joint savings and there's no discussion in Simon or any case discussing Simon saying that it's somehow is different than joint bank accounts in vocal Simon decent are the two leading cases that say when you were fiduciary. It's not just the actions is not just the 33 actions she took as a fiduciary. So for example, as we pointed out in a reply brief on page 16 In November 2011 Mary transferred. This is the allegation 23,000 from john's bank account individual bank account to her individual bank account. She has to account for that that's presumptively fraudulent. That doesn't mean she can't explain it. It doesn't mean she can't point to her accounting and say, here's the accounting and here's how I explained that But she was a fiduciary in November 11 she effectuated the transfer as a fiduciary and the money went from his account to her account. She has to account for that, to the extent that there are Verizon bills. All she has to say after the 2615 is all of these Verizon bills were spent for the two of us and in almost all likelihood, the presumptions rebutted But there is more work to be done. For example, on the $23,000 and as to the sale of the home. Here's what happens on the sale of the home and we document this in our citation page 26 it's the record is C 1063 before Mary and Mary has two of these transactions on her on her written accounting as agent. She borrows $170,000 from john for a bridge loan until while they sell one house and buy another. Then the house sells and there's 360,000 in proceeds. The $170,000 is deposited back into john's account as it should. But then on page 26 triple I, she then transfers the remaining 191,000 to her individual bank account. That's a problem. That's, that's not grocery shopping. That's a big number. She has to account for that and if her accounting, which the court deemed was sufficient. Does it readily, then Mary shouldn't have a problem. Once the six one foot once the we get into discovery saying look here's my accounting line 16. This explains why I got the $191,000. Remember, this is a joint asset that at that point the profit was converted to hers alone. That transaction alone is enough to satisfy and get past a 615. Are there transactions that perhaps wouldn't be replied, I suspect there's a few. Are there transactions that she can show are rebutted, I suspect there are a few, but I do believe that transactions such as her transferring money from his individual account to her account and her taking joint proceeds of a sale of real estate and putting her account only. Those are the sorts of actions that a fiduciary has to explain. And that's why I go back to. In fact, me is a constructive trust case of a 40 year marriage decent 40 year marriage, Simon 40 year marriage, just because you've been married a long time, just because you took care of your spouse doesn't mean you have to, you don't have to account for the actions you took while a fiduciary. That is all we're saying is that we get past the dismissal stage, and we hit, and then we go forward and Mary rebuts as she can. So for the reasons we've stated here and for the reasons we've stated in our brief, and our supplemental document we believe the judgment was final, and we believe that this court should reverse the 2615. Thank you, your honors. Thank you counsel will take the matter under advisement will wait to readiness in the next case.